UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD DINTELMANN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VILLAGE OF FREEBURG, ILLINOIS, )<br>)<br>Serve at: )<br>)<br>14 Southgate Center )<br>Freeburg, IL 62243 )<br>)<br>Defendant. ) | No. 14-cv-00855-NJR-DGW<br><br>JURY TRIAL REQUESTED |

## COMPLAINT

I.  **INTRODUCTION**

1. This matter arises under the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Civil Rights Act, 42 U.S.C. § 1983, and the Illinois Human Rights Act, 775 Ill. Comp. Stat. Ann. 5/1-101 *et seq.* Prior to the institution of this lawsuit, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission and the Illinois Department of Human Rights against Defendant Village of Freeburg, Illinois alleging violations of the Americans with Disabilities Act, the Civil Rights Act and the Illinois Human Rights Act on account of disability discrimination. A copy of the Plaintiff's charge is attached hereto as Exhibit A and incorporated herein by reference. Plaintiff received a "Right to Sue" letter on April 30, 2014, which is attached hereto as Exhibit B and incorporated herein by reference. This lawsuit has commenced within ninety (90) days after Plaintiff's receipt of the Right to Sue, and all conditions precedent to the institution of this lawsuit have been performed or have occurred.

1

2. Plaintiff Ronald Dintelmann was the Public Works Director for Defendant Village of Freeburg, Illinois for 17 years, from 1996 until May 2013. In May 2010, Mr. Dintelmann underwent surgery and radiation treatment for a brain tumor. He returned to work on a full-time basis in January 2011. In July 2011, Mr. Dintelmann suffered radiation necrosis, which affected his ability to walk; he returned to work in February 2012, following medical treatment. In May 2013, Mayor Seth Speiser suggested to the Village Board, during an Executive Session, that Mr. Dintelmann's employment not be renewed because he did not believe Mr. Dintelmann could "get around." Following that session, the Board voted not to renew Mr. Dintelmann's employment and instead appointed his subordinate as Public Works Director. Mr. Dintelmann seeks a declaration that the Village of Freeburg violated his rights under the Rehabilitation Act, the ADA, the Civil Rights Act, and the Illinois Human Rights Act, as well as compensatory and punitive damages, attorney's fees, expenses and costs.

## II. JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, 29 U.S.C. § 794, and 42 U.S.C. § 3613. Mr. Dintelmann's claims are authorized by 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1983.

4. Venue is proper within the Southern District of Illinois because all discriminatory acts complained of occurred in the Southern District of Illinois.

## III. PARTIES

5. Plaintiff Ronald Dintelmann ("Mr. Dintelmann") was employed as the Public Works Director for the Village of Freeburg, Illinois from 1996 until May 6, 2013. At all relevant times, Mr. Dintelmann has been a qualified individual pursuant to 42 U.S.C. § 12111(8).

6. Defendant Village of Freeburg, Illinois ("Defendant Village") is a municipal

governmental entity located in the Southern District of Illinois. At all relevant times, Defendant Village has been a covered entity under 42 U.S.C. § 12111(2).

IV. **STATEMENT OF FACTS**

7. Mr. Dintelmann was the Public Works Director for Defendant Freeburg from 1996 until May 2013. He was re-appointed to the position by three (3) separate mayors over the course of 17 years.

8. Before accepting the appointment as Public Works Director in 1996, Mr. Dintelmann was an elected official for 11 years, winning re-election three (3) times. He also served as chairman of the Electric Department.

9. In May 2010, Mr. Dintelmann underwent surgery and received radiation treatment for a brain tumor. The removal of the brain tumor resulted in some physical limitations, but Mr. Dintelmann's mental abilities remained unaffected. Physical therapy helped Mr. Dintelmann overcome some of his physical limitations. He was able to return to work part-time in October 2010, and returned full-time in January 2011.

10. In July 2011, Mr. Dintelmann experienced radiation necrosis, which resulted in impaired walking abilities. He took a medical leave of absence to receive medical treatment from July 2011 until February 2012.

11. Mr. Dintelmann used a wheelchair for a short time after his return in February 2012. Following that short time, the only physical limitation Mr. Dintelmann experienced was the required use of a walker and an inability to drive a vehicle. At the time, the Village Trustee, Seth Speiser, questioned the Mayor whether Mr. Dintelmann should receive a pay deduction compared to his salary prior to his medical leave despite the fact that at all times after his return from leave, Mr. Dintelmann's performance met or exceeded Defendant's expectations and Mr. Dintelmann

was able to perform the essential functions of his job with accommodations.

12. Then-Mayor Ray Danford moved the office of the Public Works Director to City Hall in mid-2012 as the result of a prior plan. Following the move, most of Mr. Dintelmann's duties were administrative in nature and did not require substantial transportation or movement.

13. On April 9, 2013, Seth Speiser was elected Mayor of Defendant Village. He assumed office on May 6, 2013 and, on that day, offered Mr. Dintelmann a temporary 90-day position as an administrative assistant. Mr. Dintelmann's duties as an administrative assistant would have been to train the incoming Public Works Director, and otherwise handle clerical and secretarial tasks. All employment with the Defendant Village would have been terminated subsequent to the 90-day period.

14. Mr. Dintelmann was humiliated to be offered what amounted to a secretarial position following nearly two decades as Public Works Director, and a prior decade as an elected official.

15. Prior to ratification of his appointments by the Village Board of Trustees ("Board"), Mayor Speiser called an Executive Session with the Board, wherein Mayor Speiser recommended that the Board not re-appoint Mr. Dintelmann due to his supposed inability to "get around."

16. Prior to the Executive Session Board Meeting, Mayor Speiser informed Mr. Dintelmann that he was going to recommend to the Personnel Committee that the job description for the Public Works Director be amended to include physical requirements that were not essential to the performance of the job, such as the ability to walk on uneven ground. At the recommendation of their attorney, the Board declined to adopt the recommended amendment.

17. As a result of Mayor Speiser's recommendation, the Board appointed John Tolan to the position of Public Works Director. Prior to his appointment, Mr. Tolan was Mr.

Dintelmann's assistant.

18. Mr. Dintelmann's background and experience made him particularly well-suited to the position of Public Works Director. He was familiar with the operation of the power plant, including its mechanics and electrical systems, which was a significant duty of the Public Works Director. His mechanical background provided him the ability to accurately inspect the competency and sufficiency of work on job sites. Furthermore, he possesses the ability to prepare and operate a budget, a task that is central to the performance of Public Works Director.

19. At the time of his appointment, Mr. Tolan had inferior background and experience in all of the above-mentioned critical performance areas of the Public Works Director.

20. At the time of the non-renewal of his position, Mr. Dintelmann's annual rate of pay was approximately $75,664.

21. As a proximate result of Defendant Village's conduct, Plaintiff Ronald Dintelmann has suffered and continues to suffer humiliation, mental pain and anguish, as well as loss of his civil rights and loss of earnings and other employment benefits that he would have received absent Defendant's discrimination.

**V.   CLAIMS FOR RELIEF**

<u>COUNT ONE – REHABILITATION ACT</u>

22. Defendant Village is a recipient of federal financial assistance.

23. As a result of its status as a recipient of federal funds, Defendant Village must comply with Section 504 of the Rehabilitation Act, which provides in part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

24. In a complaint alleging discrimination, Section 794(d) of the Rehabilitation Act incorporates the standards applied under Title I of the ADA, which prohibit employment discrimination.

25. The ADA provides:

> (a) General rule. No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

26. At the time of the non-renewal of his position, Mr. Dintelmann was disabled and substantially limited in one or more major life activities. Defendant Village regarded Mr. Dintelmann as being disabled and substantially limited in one or more major life activities. However, Mr. Dintelmann was able to perform the essential functions of his position, with reasonable accommodation.

27. Mr. Dintelmann was an "otherwise qualified individual with a disability" who was discriminated against by Defendant Village because of his disability.

28. As a proximate result of this discrimination, Mr. Dintelmann has lost wages, employee benefits, and suffered humiliation, pain and mental anguish as described above.

## COUNT TWO – AMERICANS WITH DISABILITIES ACT

29. At the time of the non-renewal of his position, Mr. Dintelmann was disabled and substantially limited in one or more major life activities. Defendant Village regarded Mr. Dintelmann as being disabled and substantially limited in one or more major life activities.

30. At all times relevant, Mr. Dintelmann was a qualified individual able to perform the essential functions of his position, with or without reasonable accommodation.

31. At all relevant times, Defendant Village has been a covered entity under 42 U.S.C. § 12111(2).

32. The ADA provides:

> (a) General rule. No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

33. Defendant Village's conduct described above violates the ADA, 42 U.S.C. § 12112, and the applicable regulations.

34. As a proximate result of this discrimination, Mr. Dintelmann has lost wages, employee benefits, and suffered humiliation, pain and mental anguish as described above.

## COUNT THREE – CIVIL RIGHTS ACT

35. The foregoing actions of Defendant Village violated the laws of the United States, and Mr. Dintelmann is entitled to all remedies available against public authorities for such violations in accordance with the Civil Rights Act, 42 U.S.C. § 1983.

## COUNT IV – ILLINOIS HUMAN RIGHTS ACT

36. Mr. Dintelmann has a fundamental right to be free from discrimination based on disability in the workplace.

37. Defendant Village violated Mr. Dintelmann's fundamental rights when they decided not to re-appoint him as Public Works Director as a result of his disability, as described above.

38. As a proximate result of this discrimination, Mr. Dintelmann has lost wages, employee benefits, and suffered humiliation, pain and mental anguish as described above.

## VI. CONCLUSION

39. WHEREFORE, Plaintiff Ronald Dintelmann requests a declaratory judgment against Defendant Village of Freeburg, Illinois that its actions described above violated the Rehabilitation Act of 1973, the ADA, the Civil Rights Act, and the Illinois Human Rights Act, for compensatory damages and punitive damages, for lost wages and for damages arising out of his emotional injury and distress and loss of his rights, together with attorney's fees, costs and expenses, and for such other relief as may be just and proper under the circumstances.

## VII. JURY DEMAND

40. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

/s/ *Thomas E. Kennedy, III*
**THOMAS E. KENNEDY, III, #44617**
*Law Offices of Thomas E. Kennedy, III, L.C.*
906 Olive St., Ste. 200
St. Louis, MO 63101
314.872.9041 phone
314.872.9043 fax
tkennedy@tkennedylaw.com

***ATTORNEY FOR PLAINTIFF***